**SO ORDERED: May 26, 2009.**

**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Olio Dental, Inc., | ) | Case No. 08-10305-BHL-11 |
| | ) | |
| Debtor. | ) | |

**ORDER ON OBJECTION TO HPSC, INC.'S PROOF OF CLAIM**

This matter comes before the Court on an **Objection to Proof of Claim of HPSC, Inc.** [Docket # 112] filed by Olio Dental, Inc. ["Olio"] on March 3, 2009. **HPSC, Inc.'s Response to Olio Dental, Inc.'s Objection to Proof of Claim** was filed on April 2, 2009. A hearing was held on April 8, 2009, at which time the Court took the matter under advisement.

**Facts**

HPSC, Inc. ["HPSC"] became a creditor of Olio on January 24, 2005 when HPSC and Olio entered into a financing agreement for the purchase of dental and office equipment. Olio granted a HPSC a "blanket" security interest in all assets that included:

> All assets, now owned or hereafter acquired and wherever located including without limitation all equipment, inventory, investment property, cash, and deposit accounts, policies of insurance, fixtures and general intangibles of every kind, together with

      all improvements and additions to, replacements and upgrades for and proceeds of all the foregoing.

*HPSC's Exh. 1*. Olio defaulted on its loan payments to HPSC and was $70,774.75 in arrears as of the petition date. The note was accelerated and, as of the date the motion for relief was filed, Olio owed HPSC $479,996.92.

      Olio claims that the collateral in which HPSC maintains a security interest is worth $34,493.00, the amount Olio claims would be received at a liquidation sale. *Objection to Proof of Claim of HPSC, Inc.* [Docket # 112]. HPSC maintains that their collateral includes the value of the practice as a going concern and thus its value is between $374,400.00 to $499,200.00. *HPSC's Exh. 3*. Olio's objection to HPSC's claim is based on the aforesaid valuation of the collateral in which HPSC claims an interest.

## Discussion

      11 U.S.C. § 506 controls the determination of a creditor's secured status in property of the bankruptcy estate. It states:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

When determining value in a chapter 7 or 13, the Supreme Court has offered some guidance in *Associates Commercial Corporation v. Rash*, 520 U.S. 953, 955 (1997). In that case, the Court found that the value of the debtor's use of the collateral warranted a replacement-value standard as opposed to a foreclosure-value standard. In other words, an asset's value depends on the price that

could be agreed by willing buyers and sellers negotiating for a replacement. *United Air Lines, Inc. v. Regional Airports Improvement Corp,* 2009 WL 1181852 (7th Cir.) (citing *Rash).* Congress memorialized that holding in 2005 when it added section 506(a)(2) which applies if the debtor is an individual in a case under chapter 7 or 13.

While the test sounds simple enough, judicial determinations of value have been widely divergent before and after *Rash.* That's because valuation must be ascertained on a case-by-case basis considering the various factors implicit in such a determination. In a case where the debtor intends to retain and use the collateral to operate his business as a viable going concern, some courts have found the appropriate valuation to be a "use value" or generalized "fair market value" of the property. *United States v. Taffi (In re Taffi)*, 96 F.3d 1190, 1192 (9th Cir. 1996), *cert. denied*, 521 U.S. 1103, 117 S.Ct. 2478, 138 L.Ed.2d 987 (1997). Because this Debtor intends to retain the collateral and continue operating the business, the Court cannot value the collateral as if it were being liquidated.

In considering the "replacement" or "use" value of the collateral, the Court must look at the value of the collateral from the debtor's perspective. Certainly, the retention and use of the collateral has a significant value to this Debtor as it is essential to the Debtor's attempts at a successful reorganization. There are various components of the debtor's business which add value to the Debtor and should be factored into the Court's analysis.

Although the Debtor owns no real property, HPSC clearly possesses a lien on the Debtor's "hard" assets such as "Cash on Hand", "Accounts Receivable", and "Office equipment/furnishings". Because HPSC's collateral also includes "general intangibles of every kind", however, the valuation must take into account the value of the business going forward.

3

A review of various pleadings in this case, including Debtor's schedules, disclosure statement, operating reports, and cash flow analyses, provide the Court with a reasonable profile of the Debtor's business. At the time of filing, the Schedules indicate that the business had $51,710.93 in assets and almost $1.2 million in liabilities. The Profit and Loss Statement filed of record in this case indicates that the business had net income in 2007 of $23,000. The most recent Practice Analysis filed by the Debtor through April 24, 2009, reveals outstanding year-to-date receivables of almost $46,000. The Debtor projects that, with a successful reorganization, the business could yield approximately $10,000/month.

From another perspective, it is also significant to note that the Debtor's principal, Dr. Robert Phillips, is not bound by any employment agreement or noncompete agreement. When viewed from the creditor's perspective, therefore, the going concern value of the business must be discounted based upon the fact that Dr. Phillips could walk away from this practice and open a new business across the street taking many of the Debtor's customers with him.

In analyzing the evidence related to the value of the tangible property, the Court must ascertain the price this Debtor would pay for the same collateral in the available market. The Debtor argues that the hard assets should be value at $20,330 and suggests a total value for the business of $34,493 and the creditor asserts a fair market value for the hard assets of $76,800 and a going concern value of $436,800. The Court, having conducted a review of the evidence and pleadings, finds that the value of HPSC's collateral in the Debtor's assets is $107,887.00, which figure represents this Court's best estimate of the use value to this debtor of retaining the collateral.

As HPSC's claim overstates the amount of their secured interest, the Court finds that Olio Dental's **Objection to Proof of Claim of HPSC, Inc.** should be, and hereby is, **SUSTAINED.**

4

HPSC's claim is secured in the amount of One Hundred Seven Thousand Eight Hundred Eighty Seven Dollars ($107,887.00) with the rest of the claim treated as unsecured.

# # #

Distribution to all parties.